UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TERRY M.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

19-CV-6550-LJV
DECISION & ORDER

---

On July 23, 2019, the plaintiff, Terry M. ("Terry"), brought this action under the Social Security Act. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On May 11, 2020, Terry moved for judgment on the pleadings, Docket Item 14; on August 6, 2020, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 18; and on August 27, 2020, Terry replied, Docket Item 19.

For the reasons stated below, this Court grants Terry's motion in part and denies the Commissioner's cross-motion.[2]

---

[1] To protect the privacy interests of social security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the [Administrative Law Judge ('ALJ')] applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

Terry argues that the ALJ erred in two ways. Docket Item 14-1. She first argues that because the ALJ did not rely on a medical opinion or close gaps in the record, her physical residual functional capacity ("RFC") is unsupported by substantial evidence.

2

*See id.* at 11.  She also argues that because the ALJ excluded limitations found by Yu-Ling Lin, Ph.D., despite affording Dr. Lin's opinion great weight, her mental RFC is unsupported by substantial evidence.  *Id.* at 18-19.  This Court agrees that the ALJ erred and, because the ALJ's error was to Terry's prejudice, remands the matter to the Commissioner.

"Because stress is 'highly individualized,'" an ALJ must "make specific findings about the nature of [a claimant's] stress, the circumstances that trigger it, and how those factors affect [her] ability to work."  *Stadler v. Barnhart*, 464 F. Supp. 2d 183, 189 (W.D.N.Y. 2006) (citing SSR 85-15, 1985 WL 56857, at *6 (Jan. 1, 1985) (explaining that "[b]ecause response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job . . . [and a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment")); *see also Welch v. Chater*, 923 F. Supp. 17, 21 (W.D.N.Y.1996) ("Although a particular job may appear to involve little stress, it may, in fact, be stressful and beyond the capabilities of an individual with particular mental impairments").  As the Commissioner's own regulations explain,

> [a] claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job.  [F]or example, a busboy need only clear dishes from tables.  But an individual with a severe mental disorder may find unmanageable the demands of making sure that he removes all the dishes, does not drop them, and gets the table cleared promptly for the waiter or waitress.  Similarly, an individual who cannot tolerate being supervised may not be able to work even in the absence of close supervision; the *knowledge* that one's work is being judged and evaluated, even when the supervision is remote or indirect, can be intolerable for some mentally impaired persons.

3

SSR 85-15, 1985 WL 56857, at *6 (emphasis in original).  So when a claimant suffers from significant stress, the ALJ must consider how that stress might affect the claimant's ability to perform the specific job or jobs that *otherwise fit her RFC profile.*

Dr. Lin completed a psychological evaluation of Terry in January 2015.  Docket Item 7 at 463.  Dr. Lin found that Terry "can follow and understand simple directions and instructions" and "perform simple tasks independently"; has a mild limitation "in maintaining attention and concentration . . . [and] relating adequately with others"; and has a moderate limitation "in performing complex tasks independently" . . . [and] making appropriate decisions."  *Id.* at 465.  Most significant to Terry's argument here, Dr. Lin found that Terry has a moderate to marked limitation "in appropriately dealing with stress."  *Id.*  In fact, Dr. Lin specifically noted that Terry's "[d]ifficulties are caused" not only by "lack of motivation" but also "by stress-related problems."  *Id.*

The ALJ afforded Dr. Lin's opinion "great weight" because "Dr. Lin is a medical expert who . . . personally examine[d Terry, and  her] opinion [was] consistent with [Terry's] therapy notes and with the results of Dr. Lin's examination."  *Id.* at 23.  But the ALJ formulated an RFC that did not incorporate Dr. Lin's opinion that Terry was "moderately to markedly limited in appropriately dealing with stress."  Indeed, the RFC did not include any specific stress limitation at all.[3]  *See id.* at 21.

---

[3] The ALJ found that Terry had the mental RFC to perform "simple routine tasks with occasional decision making, occasional workplace changes, and no more than occasional interaction with coworkers, supervisors, and no interaction with the public."  Docket Item 7 at 21.  But the ALJ did not link those limitations to Terry's stress or any other mental health issue that Terry faced.  Even more basically, the ALJ did not explicitly address Terry's stress in any way whatsoever.  So this Court has no way of knowing whether these RFC limitations were, in fact, designed to address Terry's stress, much less evaluating whether they would be effective in doing so.

4

The ALJ's failure to address Terry's stress leaves significant gaps in the ALJ's decision and raises significant questions about whether Terry could perform the jobs that the ALJ found her able to perform. For example, although the ALJ found that Terry had a moderate limitation in relating with others and discussed Terry's testimony that she became angry and lashed out, *see id.* at 20, 22, the ALJ did not make any specific findings about how Terry's stress affected that behavior or what circumstances triggered it, *see Stadler*, 464 F. Supp. 2d at 189. Likewise, the ALJ did not ask about, and the vocational expert did not address, the mental demands of the jobs that the vocational expert identified, how stressful those jobs are, or how "moderate[] to marked[]" stress limitations might affect the performance of those jobs. *See* Docket Item 7 at 70. Indeed, the ALJ never even mentioned the nature of Terry's stress or how it affected her ability to function. *See id.* at 21-24.

In other words, the ALJ not only failed to address Terry's stress and what might cause it, he also failed even to consider how that stress might impact her RFC. *See Stadler*, 464 F. Supp. 2d at 189. For that reason, and because Terry's stress might well affect her ability to perform the work that the ALJ found she could do, the ALJ erred and his error was not harmless. *See Welch*, 923 F. Supp. at 20-21 ("Even if this Court were to accept the ALJ's general conclusion that [the] plaintiff has the residual functional capacity to perform simple, low-stress work, this Court is still unable to determine whether she can perform her past relevant job as a cleaner without any knowledge regarding the demands of that job. Here, the ALJ needed to probe into the stress level of [the] plaintiff's past relevant work as a cleaner in order to determine if, in fact, she currently is capable of performing that job.") (citation omitted)).

The Commissioner argues that "the ALJ['s] limiting social contact, particularly [with] the public, along with the other stress-reducing limitations, was particularly designed to account for [Dr. Lin's] limitation with stress." Docket Item 18-1 at 20.  But if the ALJ in fact considered Terry's stress and incorporated it into the RFC, his conclusions and reasoning are missing.  Because the ALJ did not explicitly address Terry's stress, this Court does not know whether the ALJ failed to consider it; considered it but found that it did not impact Terry's RFC; or reached some other conclusion.  It is a foundational principle of administrative law that "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943); *see also Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) (quoting another source) (noting that courts "may not accept . . . *post hoc* rationalizations for agency action").  Because the ALJ did not link any limitations in the RFC to Terry's stress, the Commissioner's belated attempt to salvage the RFC by adding the missing link lacks merit.

Moreover, as Terry correctly observes, "a limitation in interacting with the public is not equivalent to a limitation interacting with coworkers or supervisors." *Smith v. Colvin*, 2017 WL 489701, at *3 (W.D.N.Y. Feb. 7, 2017) (citing *Nickens v. Colvin*, 2014 WL 4792197, *2 (W.D. Pa. Sept. 23, 2014) ("The public, supervisors, and co-workers are distinct groups . . . . Thus, limitations on two of these types of interactions in the RFC does not account for limitations on the third.")).  Stress may indeed be caused by social interaction with the public, but it is by no means limited to that.  What is more, if being around people generally caused Terry's stress, the ALJ did not explain how or

why he concluded that Terry could occasionally interact with supervisors and coworkers but never interact with the public; in other words, he did not provide any basis for concluding that Terry might experience stress when dealing with "the public" but not with "coworkers" and "supervisors."  *See* Docket Item 7 at 21; *see generally Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (requiring an "'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that . . . 'a reviewing court . . . may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review'").

All of this is not to say that the ALJ was required to adopt everything in Dr. Lin's opinion.  *See Younes v. Colvin*, 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015) ("There is no absolute bar to crediting only portions of medical source opinions.").  But if the ALJ rejected part of Dr. Lin's opinion—such as the stress limitation—the ALJ was required to explain what he was doing and why.  *See Raymer v. Colvin*, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015) (explaining that when "an ALJ . . . chooses to adopt only portions of a medical opinion[, he] must explain his . . . decision to reject the remaining portions").  By giving Dr. Lin's opinion great weight but ignoring significant limitations in that opinion, the ALJ erred.

Finally, it is worth noting that Dr. Lin was not the only provider who diagnosed Terry with a significant stress problem.  *See, e.g.,* Docket Item 7 at 394 (opinion of Gregory Fabiano, Ph.D., diagnosing moderate limitations in appropriately dealing with stress); *id.* at 617, 655, 670, 673 (Rochester General Hospital treatment notes referring to stress and difficulty being around others).  And even if that were not true, the ALJ did not afford any other medical opinion as much weight as Dr. Lin's.  *See id.* at 23-25.  So

7

if the ALJ rejected Dr. Lin's stress limitation, he apparently based that decision on his own lay judgment and not another medical opinion.  *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (explaining that an ALJ's decision to reject a medical opinion must be based on other medical evidence and not the ALJ's lay judgment).  And that was error as well.[4]

In sum, the ALJ failed to undertake an individualized stress inquiry before he concluded that Terry was not disabled.  On remand, the ALJ must explicitly consider how Terry's stress tolerance could affect her RFC as well as how stress might affect her ability to perform the specific job or jobs that otherwise fit her RFC profile.[5]

---

[4] If the ALJ rejects an opinion or part of an opinion on a particular limitation, the ALJ must base that decision on other medical evidence and may not replace the medical opinion with the ALJ's lay judgment.  *See Balsamo*, 142 F.3d at 81 ("In the absence of a medical opinion to support [an] ALJ's finding as to [a claimant's] ability to perform [a certain level of] work, it is well-settled that the ALJ cannot arbitrarily substitute his own judgment for [a] competent medical opinion.  While an ALJ is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion to or testified before him." (citation and original alterations omitted)).

[5] The Court "will not reach the remaining issues raised by [Terry] because they may be affected by the ALJ's treatment of this case on remand."  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, No. 1:13-CV-924, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015).

## **CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 18, is DENIED, and Terry's motion for judgment on the pleadings, Docket Item 14, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:     April 22, 2021
           Buffalo, New York

                                         */s/ Lawrence J. Vilardo*
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE